I bet our first case this morning is No. 23-1357, Google LLC v. Sonos, Inc., Ms. Arner. Good morning, and may it please the Court. Google is asking this Court to reverse three errors by the Board. First, a faulty claim construction that ignored the order of steps imposed by the claim language. Second, its erroneous conclusion that petitioners' evidence and mappings to Mendez would render the claims obvious even under the proper construction. And third, the sua sponte finding by the Board, the fact-finding and its unsupported obviousness conclusion made in its final written decision at footnote 11. I'll start with claim construction. Footnote 11 is an alternative ground that the Board gave. That's correct, but it still cannot save the Board's conclusion. It was an error in and of itself. I could start with that. In and of itself? I mean, even if we rule against you on the first two points? No, we need to win claim construction. That's right, yes. But all three of those, Google should prevail because of what's in the record and the mistakes made by the Board. Just to clarify, if we were to adopt the Board's construction, then we would affirm. Is that right? That's correct. Okay. The Board's claim construction, however, should not be affirmed because it ignores the order that is imposed by the language and logic of the claims themselves. It is not just antecedent basis that the claims talk about a user and then refer back to the user, but also the logic in the claims, which is that a user should be identified before favorites for the user. That phrase, favorites for the user, implies that we know who the user is first. The only record evidence supports that in the Matta-Setti Declaration, that favorites are those of the user, and so you would need to know who the user is before modifying their favorites. The order is not only required by the claim language, but also confirmed by the specification. Not required, but confirmed by the specification. Counsel, do you know of any case law where antecedent basis has been used to compel a particular ordering of the claims? I mean, I understand your argument that the user, like in Step 1-2, is going to be the user who is identified in Step 1-1, but it doesn't mean necessarily that, to me, it doesn't necessarily mean that the order of those steps is required. That is, the identifying user has to come before Step 1-2, because you could have a person who identifies their favorites, and then they're identified. And so it definitely has to be the same person, but I'm having a hard time understanding why it also means that it has to be a particular order. Thank you. And it's because it doesn't just refer, it's not just the antecedent basis of a user and the user. It's that the favorites are for the user, that we are modifying favorites for the user, and as Mr. Mattesetti explained in his declaration, that means the favorites are of that user. And so in order in Step 1-2 to modify those favorites, they need to be associated with that user at that point. That's the only record evidence that it is not just antecedent basis, which has been found, as the board correctly said, not enough in some cases. I would point you to the Hytera v. Motorola case from this court. It's non-precedential, but I think it fits very well here, in that there was antecedent basis there, A, and then the. And the court found that to be compelling order, especially where, like here, there was a figure that aligned with that order. But there's no reason in logic that you couldn't identify the user after modification takes place and before synchronization, right? To modify the favorites for the user, you need to know that they are for the user. Do you need to know the user's name? No, not necessarily, but you know they are the user. You've identified them in some way, and the patent explains that can be done in several ways. But it is required that in order for them to modify the favorites, that they need to have been identified. The patent explains that that is for security purposes or for privacy purposes, that if you're not identified, you can't even view the bookmarks, the favorites. But why wouldn't the same thing be true in Mendez? Because in Mendez, the focus is completely on synchronization, which happens later. And Mendez does not talk about what happens with modification. And the reason, it's not just different words. In the claims, there are different devices as well. And the modification of the users. I'm not understanding why it's necessary to identify the user before modification in the patent, but not in Mendez. Yes. So it's necessary in the patent because that's what the claim language says and the specification. Of course, claim construction is a different law than obviousness. But not as a matter of logic or operability, right? Well, in order to modify. You could modify and then identify. But they would not be the favorites for the user unless you knew who the user was in some way. And that's what the specification says. They must be identified to some extent before their favorites can be modified because they are favorites. What about the fact that Step 1.3 is the modifying step? Well, Step 1.2 is the receiving input at the client device to modify them on the client's side. And so that focus. Why does the receiving have to occur before identifying? What is the logical reason for that? Sorry. I'm not understanding your question. Let me grab the claim language. Your question is in response to the receiving the user input? Well, I heard you say that logically you should have to identify a user before you modify the favorite items for the user. But that's not until Step 1.3. So I was trying to figure out. Because I understand your argument to be that you need to have identifying the user to be the first step. It can't be the second step. It has to be the first. And so I was just trying to understand why it would have to occur before receiving the user input when the actual modification doesn't happen until the third step. And I think that goes back to the fact that the input is to modify favorites for the user. And so because the whole purpose of the patent is to provide personalized search for that user, personalized ads for that user, they wouldn't want anyone providing input to change their favorites and thus later change the personalization without first being identified. That in order for them to provide input in that Step 1.2 that indicates a modification to the user's favorites, they need to be sure that the user is identified first. And that's what's described in the patent in Column 7. That's what's shown in the patent in Figure 2. The other important distinction is that the modification is happening on the client, client-side storage of the client device. That input is talking about modifying the favorites on the client side. The reason it doesn't apply to Mendes, to go back to your question, Judge Dyke, is because Mendes is all about synchronizing the client's home computer or user computer to a remote computer. And so everything they've cited in Mendes is about identifying, arguably, the user in order to synchronize between client and server. But what they don't have, and that's what they mapped in the petition. Yes? Do you have a question? And here, synchronization is Step 1.4? Yes. And that's for the claimed invention? Yes, that's right. And so that happens in addition to the earlier parts of the claim, which is identifying the user before you receive input to modify the user's favorites on their client device. Mendes doesn't talk about that. You're saying that the user has to be identified by their own device in order to modify the favorites on their device? That's right, because otherwise they couldn't accomplish the purpose of the overall patent, which is to provide personalized experience for that user. And that's based in part on their favorites. And so the user is very interested in making sure that their favorites on their client device are personalized for them. And that's what the first part of the claim talks about, and that's what Mattacetti explained in his only expert testimony on the order, was that you would want to identify before receiving input to modify the favorites. Other than the user might be using the user's device to modify the favorites? They want to avoid that happening, because although Sonos tries to argue that the first thing you would have done is log on to a computer, this was a long time ago. And at the time of Mendes, computers didn't require that. You could turn on a computer at home. I did. I remember working at home on a computer. You just turned it on and worked. And then when you wanted to synchronize to send your document up to your network, then you would log on using a software like PC Anywhere. Where does the specification talk about there being a concern that somebody might modify the user's favorites without authorization? So I would point you to, I believe it's column 11 in the patent that talks about privacy, protecting the user's privacy, by disabling view bookmarks. So in appendix 72, column 11, I would say line 36 to 40, because of privacy concerns, bookmark manager may disallow access to viewing bookmarks to not logged in users. That's protecting the user and making sure that the bookmarks are for that user and not for anyone else. And if it was your home computer, which was common at the time, you and your spouse and your kids might all share one computer, and all of your bookmarks, to the extent you had them, would have been stored in a single folder, not for individual users. And that's what the 375 patent added, was that you could have bookmarks that are just for the user. One concern that I might have is that that's a good point you've made about the specification, but it does say that's one embodiment. And in this case, when you look at the claims, you don't see like linking language between the steps. You don't see, for example, it's saying identifying user. After the user is identified, modifying the bookmarks or accepting the user's input to modify the bookmarks. Those are often the kind of words that we see in claims to indicate a particular order. So what's your response to that? That's correct, but it's not always as simple as the identified user. So I would point you there to the information versus research emotion case that was about sending messages from a BlackBerry device to a server. And the language in the claim there was establishing a connection and transmitting. And the court found that it was appropriate to impose logic that the connection must be fully established before the transmission can be sent. So that was not exactly the kind of language you're talking about, Judge Stoll, where it's an identified user. It was establishing a connection and transmitting. But the court found that that kind of language logically made sense, that you would need to establish the connection before the transmission. I've been looking at our case laws. Either the plain claim language requires a particular order, or logic, that is how the invention works, requires a particular order, or the specification has some sort of disclaimer or something that makes it so that you have to read the claim to be a particular order. So it sounds like you're merging logic with plain language. I'm saying we have both here. I would say we have the antecedent basis. We do, that there are favorites for the user after you identify a user. But I recognize that you have cases that say a user, the user is not enough. And here we're also saying that in addition to that link, there's also the logical link of being able to receive inputs and modify favorites for the user requires identifying who the user is in the first place. So in column 11 when they talk about logging in, they're talking about logging into the device? To the bookmark manager, which could be through a plug-in. Logging into the browser, you mean? Logging in on their computer, that's right. Into their browser where their bookmarks are stored. I'm sorry, I didn't understand. Okay. It's saying if the user logs in, if the device requires a log in, then the user is identifying himself or herself by doing that, right? Yes. So why doesn't that happen with Mendes? Because Mendes was about, when Mendes talks about log on or operating when a user is not there, they are talking about as a trigger for the synchronization process, as a part of the process of synchronizing what's on the client computer to the server. But in Mendes, in situations where the computer device requires a log in, then they are requiring, then the user would be required to identify. That could be, but there's no evidence to that, and that was not the argument that the petitioner ever made. That's where the board's erroneous footnote came in. They made an unsupported fact finding that it would have been obvious, or first that it would have been conventional for users to log in as a first step, and that violates, at least in Reserco, which says that the board cannot create evidence. It doesn't have to have an expert to interpret evidence or references, but it cannot create evidence out of whole cloth, and that is what happened here, because I think they recognized at the final written decision that that argument hadn't been made, and that evidence that you're suggesting might exist, that at the time of Mendes or at the time of the 375 patent, you had to log in. That has not always been the case, and there isn't any evidence. It doesn't always have to be the case. It just has to be the case sometimes. And we don't have any evidence to support the fact that that had to be first. And in Mendes, when they talk about logging on, they're talking about triggering the synchronization process, and that's exactly what I remember doing. The board could take notice that for many devices, the user has to log in before using it. That would support the notion that Mendes disclosed log in first, if you accept that. I think that's what the board was trying to do in its footnote, was to come up with that fact finding on its own, but that's not permitted. They have to have some evidence in the record so that Google can have a chance to put in evidence to respond, and this court is reviewing a supported fact finding, not a fact finding for the first time. Okay, unless there are other questions, we'll give you two minutes for rebuttal. Thank you. Ms. Moulton. Thank you. May it please the court, Elizabeth Moulton for Sonos. I'll just start with the claim construction argument. The general rule is that method claims are not construed to require a particular order of steps, unless the language of the claims compels an order as a matter of logic or grammar, or the specification directly or implicitly requires a particular order. I think Google agrees that the specification does not require an order, so they're relying on logic or grammar, and their primary argument is this for the user point. In our red brief at 28, we gave the example of a user shopping on Amazon, adding items to their cart, which are stored for that user, even before they've signed into Amazon to check out and synchronize to the Amazon server. And that example of modification before identification is totally consistent with the specification. Can I ask you your example that you gave? What is the timeline of that? I'm just curious. I mean, like, it's something to think about. What is the, you know, date of the invention here? Is that at the time of the invention? Is this example that you gave in an expert opinion or anything that's talking about the time of the invention? Yeah, it was given to the board at the final hearing, and the board elicited, I think, from Google's counsel that Amazon and that checking out on Amazon existed at the time of the invention. Okay. Thank you. And that is consistent with the specification and the claim language. The first time the claim is used for the user, as Judge Stoll pointed out, is in the second step, receiving user input from the user, and then the user input indicating a modification to the set of favorite items for the user. So what that's telling us is that the user inputting the modification is the same user the favorites are for. So this for the user phrase is just another flavor of Google's antecedent basis argument. And again, all that tells us is that it's one user throughout the claims, not that identification has to happen before modification. When the claims do use language requiring an order, they use very specific causal language, like in response to, or that the modification initiates the synchronization process. And besides that causation language that we have, we also know this because the claims don't refer to the identified user, meaning that there's nothing logically or grammatically requiring identification before modification. And Google's specification says almost the same thing. At Appendix 70 in Column 7, it talks about users who desire synchronization across... Hang on for a second, I want to catch up with you. What line are you referring to? Line 37 to 41. Thank you. So it says users who desire synchronization across different browsers or slash computers or other types of personalization need to identify themselves to the bookmark manager to some extent so the bookmark manager has a primary key with which to store the user's bookmarks. So there it's linking identification to synchronization, just like the claim language does, which is why you don't need to identify before you modify the bookmarks. But what about the privacy argument? So the privacy argument, the very end of that sentence talks about how you can still have personalized searching for not logged in users if you use a cookie method. Is there a cookie method identifying the user? I mean, in fact, in Column 7 it says there's many different ways someone could be identified by using cookies, right? I think it's Line 47 of Column 7. So that's identifying, right? Yeah, the 375 specification uses cookies to identify and then it also uses cookies if you go to Column 11, Line 40. So this is the end of the sentence that Google's counsel read. It says, nevertheless, search results may be appropriately personalized based on just the cookie of not logged in users. What I'm saying is I don't understand your argument and the reason why is because reliance on this sentence is about using cookies in Column 11, Line 40 and saying that's not identifying the user. Wouldn't this be false to me? Because Column 7 says that you can identify a user using cookies. So I think even the stuff in Column 11 is identifying a user. It's just using what the patent refers to as I think you can to some extent identify the user, right? Sure, so I guess what this patent is explaining that if you read the cookies as a way to identify a user, then you don't even need to log in to identify a user. So that further supports that Mendes renders the claims obvious because whether the board's fact findings about logging in or just identifying a user locally on the device before you synchronize in Mendes, if there's lots of different ways to log in, there's no reason you have to log in or identify a user. Does Mendes say that it identifies a user using any technique as a first step? I don't think it did. I mean, I think you've got better arguments, but I think this one I'm pushing back on you because it doesn't seem technically accurate. I don't see where Mendes says that it first identifies a user using cookies or anything else. Right, so Mendes at Column 2 talks about how you can log in to a computer and use that as a way to identify a user. I agree with Your Honor that there's not an explicit, you know, I can't quote Mendes to say as a first step you log in. But the board's fact finding that Mendes would render that obvious is supported by substantial evidence, and that's an independent basis to affirm besides the claim construction argument. But the security argument that Google's making for the 375 patent, that only applies if you're trying to synchronize across multiple computers or you're trying to sync up to really Google's search engine server. But the 375 patent itself says you can have the bookmarks stored locally, which is you can have the bookmarks. You don't have to sync up to the global server just to provide personalized search results or just to provide the search results in Step 5 of the claim at all. What do you make on 1528, Column 8 of Mendes, Line 57, where it says accordingly bookmark in the global format includes a user identification? What are we supposed to understand from that? So the board found Figure 6 of Mendes shows that you identify the user locally, and then when you upload or store the bookmark format in the global bookmark manager, that that would include a user ID. And the board's findings on that are in Appendix 22. So that tells you that- Does this column suggest that modifications or bookmark identification in Mendes includes the identification of a user? Yes, and that's what the board found at Appendix 22. They used the login teaching at Column 2 of Mendes combined with this appending the user ID to the created bookmarks to find that it makes obvious identifying a user prior to creation of a bookmark. And that's the board's sentence at Appendix 22 to 23. So that's an independent basis to affirm besides the claim construction language. If there are no further questions. Okay, thank you. Thank you. I know we've got two minutes. So what about Column 8 of Mendes in Line 57, the bookmark in the global format includes the user identification? As a perfect example of the board's problem here is that that has to do with bookmark creation on the server. Figure 6 is about what's stored on the server, the remote server, not what is happening on the client device where the modification input is received after the user is identified. The problem the board has is that it relied on the argument by the petitioner that if it is somewhere on the server, as it shows in Figure 6 in Column 8, it must have been sent by the client. Therefore, it must have been on the client at some point. The board bought that argument, which was made in the reply, and then based its decision on it. However, that does not get to Element 1.1 and 1.2. 1.2 in particular, where you're receiving input on the client device to modify favorites stored on the client device. The problem is they disagreed with you in the reading of Mendes and Figure 6 in this language. The only expert testimony on the order of the claims is from Google. There was no testimony in the reply to support that argument by the attorneys that it must have been done on the client because it eventually got to the server. But that does not get to the language of Claim Element 1.2, which requires input to modify favorites on the client device. And that's because Mendes wasn't concerned with how they're modified. Mendes only cared that the copies were the same across the user devices. That's really where Mendes kicks in. That's where Mendes cares about a login or a user preference being stored. It's when the synchronization across devices happens. It is not about the client device modifying the favorites for the user on the client device. To your point about claim construction, if I may, just in the last minute, I think that Ford and Sonos rely on cases for that claim order that are easily distinguishable because they had things like an interactive gift. The order would have excluded the preferred embodiment. Or in Respironics cited by the board, the claim language, the specific term argued to import order had been amended during prosecution, and therefore the order had been disclaimed during prosecution. Those are very different situations to what we have here, which is more similar to the Mformation case and the HITERA case, where it's not just the antecedent basis, A, the, it is the modifying favorites for the user, plus the specification and the expert testimony. Okay, thank you. I think we're out of time. Thank you very much. Both counsel, the case is submitted.